**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff<br><br>v.<br><br>**MARIO RAYNARD ROBERSON,** Defendant. | **CRIMINAL NO. 4:25-CR-00355** |

**UNITED STATES RESPONSE IN OPPOSITION TO MOTION TO AMEND CONDITIONS OF RELEASE**

The United States of America, through its undersigned counsels, respectfully opposes Defendant Mario Roberson's Motion to Amend Conditions of Release (ECF No. 52). The Defendant seeks to remove his GPS monitoring device and obtain unrestricted travel privileges to the lower forty-eight (48) states for employment purposes without prior approval from Pretrial Services. Since the defendant has failed to meet his burden under the Bail Reform Act, the Court should deny the requested modifications.

**I.   PROCEDURAL BACKGROUND**

On July 10, 2025, Defendant MARIO RAYNARD ROBERSON ("ROBERTSON") was arrested in Houston, Texas, as a result of a twelve-count indictment charging him with wire fraud, conspiracy to commit arson on a property in furtherance of a federal felony offense, **conspiracy to commit arson on a property used in interstate and foreign commerce resulting in death**, and conspiracy to violate the Travel Act.  According to the evidence in possession of the Government, in 2023, ROBERSON devised a plan to set one of his residences on fire in order defraud State Farm Insurance company. (ECF No. 1, at 3).   Two of the individuals recruited to set the fire died in the blaze.

Following ROBERSON's arrest, a contentious bail hearing was held before Honorable Magistrate Judge Christina A. Bryan ("Magistrate Judge Bryan") on July 14 and 16 of 2025. (ECF Nos. 24-25, Bail Hearing Tr.). Over the Government's objection, the Magistrate Judge ordered ROBERSON's release under restrictive conditions: a $400,000 unsecured bond with: (1) supervision by the U.S. Pretrial Services Office; (2) seeking employment; (3) surrender of any passport; (4) no international travel; **(5) travel restricted to San Jacinto County, for state court proceedings, and Harris and surrounding counties, with permission required from Pretrial Services for travel outside those areas (and specifically no travel to Missouri)**; (6) avoidance of contact with co-defendants; (7) no possession of firearms; (8) no use of alcohol; (9) no use of drugs; (10) adherence to a curfew as directed by Pretrial Services; **(11) residence in Houston, Texas (specific address); and (12) GPS monitoring.** (ECF No. 48).

The Government promptly moved for de novo review and revocation of the release order pursuant to 18 U.S.C. § 3145(b), arguing that no condition or combination of conditions could reasonably assure ROBERSON's appearance as required or the safety of the community. (ECF No. 30). Following a second contested de novo hearing, Honorable District Court Judge Charles Eskridge ("Judge Eskridge") affirmed the Magistrate Judge's release order but declined to modify the existing conditions. (Min. Entry, Oct. 9, 2025). Judge Eskridge referred the matter back to Magistrate Judge Bryan for any determinations concerning bond conditions.

On October 30, 2025, Magistrate Judge Bryan conducted a subsequent bail hearing and declined to modify any of the previously imposed conditions of release. (ECF No. 48). However, the Magistrate Judge allowed ROBERSON to propose a combination of individuals to serve as sureties in order to satisfy the $400,000 bond requirement.

2

On February 9, 2026, ROBERSON filed his motion to amend his conditions of release, seeking removal of the GPS monitoring device and unrestricted travel to the lower 48 states for purported work, and in order to visit his girlfriend and fiancée in the State of Missouri.

## II. LEGAL STANDARD

In 1984, Congress enacted the Bail Reform Act, codified at 18 U.S.C. §§ 3141 et seq., to address "the alarming problem of crimes committed by persons on release." *United States v. Salerno*, 481 U.S. 739, 742 (1987) (internal quotation marks and citation omitted). Under this statute, the judicial officer before whom an arrested individual appears must order either release or detention pending judicial proceedings. 18 U.S.C. § 3141(a). Section 3142 enumerates permissible conditions of release, which may include "specified restrictions on personal associations, place of abode, or travel." *Id*. § 3142(c)(1)(B)(iv). These conditions are designed to ensure the defendant's appearance in court and to safeguard the safety of any other person and the community. Id. § 3142(c). Courts have discretion to choose which conditions will best keep the community safe. 18 U.S.C. § 3142(c)(1)(B).

Certain conditions required to protect the safety of the community may, by necessity, impose limitations on constitutional rights. The Bail Reform Act expressly contemplates such restrictions and authorizes courts to impose release conditions that limit a defendant's rights to personal association, travel, speech directed toward a victim or witness, and the possession of firearms. 18 U.S.C. § 3142(c)(1)(B)(i)–(xiv). *See United States v. Salerno*, 481 U.S. 739, 747, 107 S. Ct. 2095, 2101, 95 L. Ed. 2d 697 (1987).

### A. *Modification of conditions of pretrial release*

Neither the Bail Reform Act nor the Federal Rules of Criminal Procedure set forth specific procedures or standards governing the modification of pretrial release conditions. Rather, the statute

3

provides only that the Court "may at any time amend the order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). However, Courts have routinely held that a motion to modify conditions of pretrial release amounts to a motion to reopen the bail hearing. *See United States v. Ladd*, No. 3:18-CR-100-L, 2020 WL 6083009, at *2 (N.D. Tex. Oct. 15, 2020); *United States v. Green*, No. 3:18-CR-356-S, 2019 WL 6529446, at *3 (N.D. Tex. Dec. 4, 2019); *United States v. Buford*, No. 24-CR-20250-4, 2024 WL 3262602, at *2 (E.D. Mich. July 1, 2024); *United States v. Gay*, No. 4:20-cr-40026-JES-JEH, 2020 WL 5983880, at *3 (C.D. Ill. Oct. 7, 2020) (collecting cases from within the Ninth Circuit).

Section 3142(f) of the Bail Reform Act, provides, in pertinent part, that a bail hearing "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

ROBERSON's motion to amend the conditions of release fails to present any material change in circumstances that would justify a modification. The information regarding ROBERSON'S alleged employment with VIP Sports Management and Averson Construction, as well as his romantic relationship with a Missouri resident, was already part of the record and fully considered by the Magistrate Judge when the original conditions were established.

In the present case, the factors set forth in 18 U.S.C. § 3142(g) continue to weigh heavily in favor of maintaining the existing conditions. Moreover, the modifications proposed by ROBERSON would eliminate critical safeguards designed to mitigate the risks of flight and danger to the community, particularly in light of the defendant's history of deceit, and ties to Missouri.

### III.    ANALISIS

*A.    The nature and circumstances of the offense favor maintaining GPS monitoring and strict travel restrictions.*

The charged offenses are extraordinarily serious, involving premeditated arson that caused two deaths and life-altering injuries to a survivor, all in furtherance of an insurance fraud scheme. According to the indictment and the evidence presented at the bail and subsequent de novo hearings, ROBERSON increased his property's insurance coverage months before the fire, fabricated racist graffiti to deflect suspicion, and recruited individuals with criminal records to execute the arson. (ECF No. 1, 3-4, ECF No. 24, Bail Hearing Tr. on 7/14/25). The evidence presented at the bail hearings—including the testimony of an FBI agent and multiple exhibits—established ROBERSON's direct involvement in the charged offenses. (ECF Nos. 24–25, Bail Hearing Tr. on 7/14/25 and 7/16/25.) The charged offenses carry substantial penalties, including the possibility of life imprisonment under 18 U.S.C. § 844(i) where arson results in death.

ROBERSON's recent motion glosses over this gravity, focusing instead on purported employment and romantic needs. Yet, the premeditated nature of the offenses—evidencing a willingness to deceive and endanger lives—counsels against loosening restrictions that mitigate flight risk and community danger. *United States v. Fortna*, 769 F.2d 243, 253 (5th Cir. 1985) (the nature and circumstances of the offense – massive amounts of drugs; sums of money and foreign contacts— supported detention); *United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (denial of pretrial release to a Mafia member charged with RICO violations, who had strong family ties, but a lifelong history of organized crime activities, concluding that the proposed conditions were inherently flawed, susceptible to circumvention or manipulation, and dependent largely on the defendant's good faith—or lack thereof—for their effectiveness); *United States v. Barnett*, 986 F. Supp. 405, 408 (W.D. La. 1997)

(after de novo review, District Court imposed stronger conditions of release on murder for hire defendant).

As a result, the Government strongly advocates against the travel and GPS modifications sought by ROBERSON.

 B. *The weight of the evidence against the defendant is strong and weights in favor of strict conditions.*

As established through the testimony and exhibits presented at the initial bail and de novo hearings, the Government's evidence against ROBERSON is overwhelming: insurance policy increases, fabricated incidents, witness statements implicating the ROBERSON, and arson investigations confirming intentional fire-setting. Indeed, at the conclusion of the de novo detention hearing on October 19, 2025, Judge Eskridge expressly acknowledged the weight of the Government's evidence.

 C. *The defendant's history and characteristics demonstrate that he is a flight risk and cannot be trusted with relaxed travel conditions.*

ROBERSON's track record of noncompliance and deceit directly contradicts his request for fewer restrictions. During his state arson proceedings, ROBERSON was observed by FBI agents residing in the State of Missouri in 2024, while on state bond conditions imposed by a bail bonds company.[1] During the initial bail hearing, ROBERSON's aunt, Dianne Roberson, who co-signed his bond conditions at the state level, admitted that ROBERSON had travelled out of state (she alleged, temporarily) and that she never notified the bond company. Even when the bond company provided ROBERSON's then defense counsel a letter confirming that he had complied with bond conditions at the state level, the same bond company sent an email to an FBI agent confirming that ROBERSON

---

[1] According to evidence presented at the initial bail hearing, ROBERSON was charged with Arson in San Jacinto County, Texas, on December 19, 2023. ROBERSON posted bail through Ellisor Bail Bonds and signed conditions with the company, with his aunt, Dianne Roberson as a co-signer. (Bail Hearing Gov. Exhibit 9).

had never contacted them (Ellisor Bonds) about an address change and that moving without notification would be a violation of his bond conditions. (ECF No. 25, Bail Hearing Tr. on 7/16/25 at 5).

During his initial interview with Pretrial Services, ROBERSON provided dubious information regarding his residence, employment history, and his purported employment at Averson Construction, an entity whose LLC status was forfeited in 2023. ROBERSON also provided questionable information about his financial circumstances, including reporting a consistent monthly income to Pretrial Services, while disclosing a significantly lower annual net income in his 2024 tax returns. Moreover, at the bail hearing the Government proffered that ROBERSON had failed to file his tax returns for the years preceding 2024. (ECF No. 30 at 8-11.)

In his most recent motion, ROBERTSON's attached letters from VIP Sports Management, Averson Construction, and Ellisor Bonds. (ECF No. 52, Exhibit 1-3). However, these letters should not alleviate the Court's concerns; they should heighten them.

1. *Ellisor Bonds's letter*

The Ellisor Bonds's letter claims that they provided verbal approvals to ROBERSON to travel for "work" but lacks documentation of the alleged approvals and conflicts with the bonds company's previous confirmation to the FBI that ROBERSON was never granted authorization to reside in the State of Missouri. (ECF No. 25, Bail Hearing Tr. on 7/16/25 at 5; ECF No. 30 at 10; Exhibit 1). The Government notes that during the initial bail hearing, ROBERSON's aunt, Ms. Roberson, admitted that ROBERSON had been residing in the state of Missouri.

Later, Ms. Roberson changed her story and explained that ROBERSON had travelled to Missouri to help his girlfriend with her daughter but planned to return to reside with her. (ECF No. 25, Bail Hearing Tr. on 7/16/25 at 67-68).

What is evident from the testimonies at the bail hearing, is that ROBERSON travelled, or resided for extensive periods of time in the state of Missouri, not for "work" as he allegedly informed the bail bonds company, but to stay with his girlfriend and fiancée, Avryl Gordon, who still resides in that State.

Accordingly, in light of the discrepancies between the assertions in Ellisor Bonds' recent letter and the record established at the initial bail hearing, the letter warrants little weight in the Court's assessment of ROBERSON's request.

    2.    *VIP Sports Management letter*

The two-sentence letter from VIP Sports Management vaguely asserts a need for ROBERSON to travel "3-4 times a week," but provides no specifics or corroborating evidence concerning the nature of ROBERSON's purported employment with the company, including whether he serves as a permanent employee or independent contractor and, if applicable, the duration of any such contract.

Moreover, following the filing of the defense motion, the FBI contacted VIP Sports Management to obtain additional information regarding ROBERSON's employment. In response, Paul Bobbitt, owner and registered agent of VIP Sports Management, informed the FBI that he was unaware of the pending criminal charges against ROBERSON at the time he signed the letter and that he did not know the letter was going to be submitted to the Court. Mr. Bobbitt further clarified that ROBERSON is not an employee of his company but rather receives commissions following the signing of athletes. When asked to provide additional details regarding ROBERSON's relationship with the company, Mr. Bobbitt declined to respond further, expressing concerns that his company might become the subject of an FBI investigation.

The Government further notes that even though ROBERSON claimed during the initial bail hearing that he had been working as a "recruiter for an unknown sports company" at the time of his arrest on federal charges (for a period of 10 years as reflected in the Pretrial Services Report), ROBERSON did not report any earnings or commissions from this alleged work in his 2024 tax filings.

Additionally, VIP Sports Management's reluctance to disclose further information to the FBI about ROBERSON's purported relationship with the company, combined with ROBERSON's own lack of candor regarding his charges, should give the Court pause and weigh heavily against granting ROBERSON's request for unrestricted travel.

      3.     *Averson Construction*

The Averson Construction letter claims that ROBERSON's is the "Head of Operations & Project Manager," contradicting prior representations he made to Pretrial Servies that he was a supervisor earning $5,000 monthly—earnings unsupported by his tax records.

Moreover, Averson's forfeited status to operate in Texas legally as an LLC raises serious questions about its legitimacy. (ECF Nos. 24 at 34, Bail Hearing Tr. on 7/14/25 and 7/16/25, Exhibit 11).

According to the letter signed by the defendant's fiancée, Avryl Gordon, on behalf of Averson, "Mario has completed projects in Texas, Louisiana, Oklahoma, and Missouri. He currently has plans to attend home builders' conferences in Nevada and Florida and to expand Averson Construction projects." However, a recent investigation conducted by the FBI revealed no filing records for an entity under the name of "Averson Construction" in any of the four jurisdictions mentioned in the letter.

Moreover, as the Government has clearly demonstrated during the initial and de novo bail hearings, as well as in its subsequent filings in support of detention, the information provided by

9

ROBERSON and his girlfriend regarding the nature of his alleged employment in Averson Construction has been inconsistent and contradictory.

Consequently, the information contained in the aforementioned letter provided by the defendant's fiancée should be viewed with caution and accorded limited credibility by this Court.

### 4. *Unrestricted frequent travel to his fiancée in Missouri*

ROBERSON, without much explanation, seeks travel to Missouri—expressly prohibited in his conditions—to visit his fiancée, Avryl Gordon, despite his prior apparent unauthorized residence there while on state bond conditions. There is no evidence to support the contention that ROBERSON's fiancée has any mobility or health issues that would prevent her from traveling to Texas to visit him. Unlike ROBERSON, his fiancée faces no criminal charges and is not subject to travel restrictions. The mere fact that she resides in another state provides no basis for amending or eliminating ROBERSON's travel restriction to Missouri.

Moreover, jail calls obtained by the Government following the initial bail hearing revealed ROBERSON's aggressive and manipulative behavior toward his fiancée, Ms. Gordon, and other family members, thereby reinforcing the conclusion that removing the travel and GPS restrictions in this case would be unwarranted and pose a danger to the community. (ECF No. 30, at 24-27).

Furthermore, the electronic monitoring ("GPS") condition imposed by the Court is a critical component of the Court's carefully calibrated release conditions and serves as an essential mechanism for accountability, supervision, and deterrence.

GPS monitoring and travel restrictions are essential to ensure compliance, as courts recognize defendants can remove devices, but their presence deters violations. *See United States v. Williams*, 2015 WL 9595403, at *3 (D. Nev. Dec. 31, 2015) ("[t]he court finds that the electronic ankle monitor is, at

worst, a minor inconvenience to defendant. Defendant has not put forth any arguments as to how the electronic monitoring has restricted or restrained him beyond ensuring compliance with the other conditions of his release."); *United States v. Gardner*, 523 F. Supp. 2d 1025, 1030 (N.D. Cal. 2007) (electronic monitoring provides real time information to Pretrial Services, it provides added insurance against violations of bond conditions, thus furthering the government's valid interest). Removing these would invite further noncompliance.

Finally, the Government notes that during the de novo bail hearing held on October 9, 2025, the Government discredited ROBERSON's claims regarding his alleged charitable and community work over the years. According to the testimony of FBI Special Agent Chantelle Bratton, both the YMCA and the Summer Creek HS Mentoring program denied any involvement with the defendant as purported by him in a sealed supplemental filing dated October 3, 2025. In addition, a former minor who was purportedly awarded a scholarship by ROBERSON, in alleged representation of the Dakota Allen Foundation, confirmed that she never received the scholarship funds. (ECF No. 44).

Consequently, ROBERSON's history of falsehoods and misrepresentations—to investigators, Pretrial Services, and the Court—undermines any assertion that relaxed conditions of release would suffice to ensure his appearance and the safety of the community as required by the Bail Reform Act.

**D. The defendant still poses a serious danger to the community supporting restrictive conditions of release.**

The nature of the offenses charged in this case, together with the information gleaned from ROBERSON's jail calls, reveals a manipulative, controlling, and aggressive personality, including threats and derogatory language directed toward his fiancée, family members, and even his former counsel. (ECF No. 30, at 24-27). In addition, ROBERSON's history of domestic abuse toward his former wife—as detailed in the published opinion of *Roberson v. Roberson*, 2023 WL 5286968 (Tex. App. Aug. 17,

11

2023)—and his demonstrated propensity for deceit, underscore an ongoing risk to the community. As a result, modifying the defendant's conditions of release to permit any period without supervision or monitoring during travel could enable further criminal, fraudulent, or harmful conduct.

In the instant case, the conditions of release were narrowly tailored by the Magistrate Judge to the specific circumstances presented. The Magistrate Judge determined that these conditions represent the least restrictive means necessary to achieve the dual objectives of 18 U.S.C. § 3142: reasonably assuring the defendant's appearance at judicial proceedings and protecting other persons and the community.

Consequently, and for these reasons stated above, the United States respectfully requests this Court to DENY defendant's Motion to Amend Conditions of Release.

**RESPECTFULLY SUBMITTED.**

In Houston, Texas, February 19, 2026.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas


*/s/ Kelly Zenón-Matos*
**Kelly Zenón-Matos**
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Main: (713) 567-9000
Direct: (713) 567-9362
Email: kelly.zenon@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this response was served on counsel of record via CMECF on February 20, 2026.

*/s/ Kelly Zenón-Matos*
Kelly Zenón-Matos
Assistant United States Attorney
United States Attorney's Office